149 T.C. No. 23

UNITED STATES TAX COURT

LAWRENCE G. GRAEV AND LORNA GRAEV, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 30638-08.                    Filed December 20, 2017.

In a proposed notice of deficiency for 2004 and 2005, R's examining agent proposed 40% gross valuation misstatement penalties under I.R.C. sec. 6662(h) with respect to the proposed disallowance of Ps' noncash charitable contribution deduction and carryover deduction. During mandatory review of the proposed notice, R's counsel recommended, as an alternative position, that 20% accuracy-related penalties be determined under I.R.C. sec. 6662(a) with respect to these same items. R's counsel's recommendation was approved in writing by his immediate supervisor and added to the notice of deficiency.

After the petition and the answer were filed, R conceded the 40% gross valuation misstatement penalties and amended his answer to reassert the 20% penalties with respect to the noncash charitable contribution deductions. The amendment to answer also asserted for

_____

[*]This Opinion supplements our previously filed Opinion, Graev v. Commissioner (Graev II), 147 T.C. ___ (Nov. 30, 2016).

the first time 20% accuracy-related penalties with respect to the proposed disallowance of a <u>cash</u> charitable contribution deduction and carryover deduction. The penalties asserted in the amendment to answer were approved in writing by the appropriate immediate supervisor.

Ps contend that R is barred from assessing the penalties at issue because R failed to comply with I.R.C. sec. 6751(b)(1), which requires that the "initial determination of * * * [the] assessment" of the penalty be "personally approved (in writing) by the immediate supervisor * * * or such higher level official as the Secretary may designate."

In <u>Graev v. Commissioner</u> (<u>Graev II</u>), 147 T.C. ___ (Nov. 30, 2016), we sustained the 20% penalties at issue, holding in part that Ps' argument that R failed to comply with I.R.C. sec. 6751(b)(1) was premature in this preassessment deficiency proceeding. Subsequently, the Court of Appeals for the Second Circuit issued its opinion in <u>Chai v. Commissioner</u>, 851 F.3d 190 (2d Cir. 2017), <u>aff'g in part, rev'g in part</u> T.C. Memo. 2015-42, holding that "the written-approval requirement of * * * [I.R.C. sec.] 6751(b)(1) is appropriately viewed as an element of a penalty claim", <u>id.</u> at 222, and that I.R.C. sec. "6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty", <u>id.</u> at 221. Because this case is appealable to the Court of Appeals for the Second Circuit, we vacated our decision in <u>Graev II</u>.

<u>Held</u>: Ps' argument that R failed to comply with I.R.C. sec. 6751(b)(1) is appropriately considered in this deficiency proceeding; <u>Graev II</u> is overruled in part.

<u>Held</u>, <u>further</u>, a showing that the written approval requirement of I.R.C. sec. 6751(b) is satisfied is part of R's burden of production under I.R.C. sec. 7491(c).

Held, further, R has shown compliance with the written approval requirement of I.R.C. sec. 6751(b) for the penalties at issue.

Held, further, Ps are liable for 20% accuracy-related penalties with respect to their disallowed deductions for both the cash and noncash charitable contributions.

Frank Agostino, Brian D. Burton, Jeremy M. Klausner, and Lawrence A. Sannicandro, for petitioners.

Shawna A. Early, for respondent.

## SUPPLEMENTAL OPINION

THORNTON, Judge:  By notice of deficiency issued pursuant to section 6212(a), respondent determined deficiencies in petitioners' income tax of $237,481 for 2004 and $412,620 for 2005.[1]  The deficiencies resulted from respondent's disallowance of both cash and noncash charitable contribution deductions claimed by petitioners.  On June 24, 2013, the Court issued an Opinion sustaining respondent's disallowance of both the cash and noncash charitable contribution deductions.  Graev v. Commissioner (Graev I), 140 T.C. 377 (2013).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986 as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In the notice of deficiency respondent also determined that for 2004 and 2005 petitioners are liable for section 6662(a) accuracy-related penalties on the underpayments of tax attributable to disallowance of the noncash charitable contribution deductions. Additionally, in an amendment to answer respondent also asserted section 6662(a) accuracy-related penalties for 2004 and 2005 on the underpayments attributable to disallowance of the cash charitable contribution deductions. Petitioners contend that all these penalties are barred by section 6751(b)(1), which provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

On November 30, 2016, the Court issued an Opinion holding that petitioners' challenge pursuant to section 6751(b) is premature in this preassessment deficiency proceeding; we sustained accuracy-related penalties, computed at the 20% rate under section 6662(a), on the underpayments attributable to disallowance of the cash and noncash charitable contribution deductions. Graev v. Commissioner (Graev II), 147 T.C. ___ (Nov. 30, 2016). On March 7, 2017, we entered our decision.

On March 20, 2017, the Court of Appeals for the Second Circuit issued its opinion in Chai v. Commissioner (Chai), 851 F.3d 190 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Chai considered the same section 6751(b)(1) issue we had addressed in Graev II but came to a different conclusion, holding that "the written-approval requirement of * * * [section] 6751(b)(1) is appropriately viewed as an element of a penalty claim", id. at 222, and that section "6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS [Internal Revenue Service] issues the notice of deficiency (or files an answer or amended answer) asserting such penalty", id. at 221. Because the instant case is appealable to the Court of Appeals for the Second Circuit, we vacated our March 7, 2017, decision and granted the parties' request for additional briefing.

As described more fully below, after taking Chai into account, we conclude that section 6751(b) does not bar assessment of the disputed section 6662(a) accuracy-related penalties.

## Background

The parties submitted the penalty issues fully stipulated pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented without a trial. Our Opinion in Graev I provides factual background with respect

to petitioners' cash and noncash contributions to the National Architectural Trust (NAT), and our Opinion in Graev II provides further factual background relating to the penalty issues. We incorporate herein the factual background of Graev I and Graev II, but we clarify and amend it as follows to reflect certain undisputed points highlighted in the parties' supplemental briefs following Chai.

On their 2004 Form 1040, U.S. Individual Income Tax Return, petitioners claimed charitable contribution deductions of $99,000 for a cash contribution and $990,000 for a facade easement given to NAT. On their 2005 Form 1040, petitioners claimed a $445,551 carryover charitable contribution deduction relating to the 2004 contributions.

During examination of petitioners' 2004 and 2005 tax returns, Revenue Agent Stephen I. Feld (RA Feld) proposed disallowing both the cash and noncash charitable contribution deductions petitioners had claimed for their contributions to NAT. RA Feld also proposed that accuracy-related penalties under section 6662(a), as increased under section 6662(h) to the 40% rate, be applied to the portions of the 2004 and 2005 underpayments attributable to disallowance of petitioners' noncash charitable contribution deduction, on the basis that the value of the noncash contribution had been grossly misstated (we sometimes refer to

these proposed 40% penalties as the primary noncash contribution penalties).[2]  RA

Feld did not propose any accuracy-related penalty computed at the 20% rate, nor

did he propose any penalty with respect to the portion of each underpayment

attributable to disallowance of the cash contribution deduction.  RA Feld's

immediate supervisor, Group Manager John Post (GM Post), approved RA Feld's

penalty proposal in writing on a "Penalty Approval Form".[3]

After approval of his penalty recommendation was secured, RA Feld

completed his examination and forwarded the administrative file to the IRS

Technical Services Unit for review and preparation of the notice of deficiency.[4]  A

---

[2]The notice of deficiency lists the amounts of the primary noncash contribution penalties as $76,084.80 and $62,377.20 for 2004 and 2005, respectively.

[3]The penalty approval form shows an "X" in the box for assertion of "6662(h) Gross Valuation Misstatement", a check in the box for "Approved", and GM Post's initials in the box marked "Group Manager Initials".  No other marks appear.

[4]Forwarding the case to the Technical Services Unit accords with procedures specified in the Internal Revenue Manual (IRM) pt. 4.8.1.1.1 (Oct. 1, 2003):

(1) Technical Services (Exam) will support Examination's objective to conduct, on a timely basis, quality examinations of each selected tax return to determine the correct tax liability by:

*      *      *      *      *      *      *

(continued...)

Technical Services employee reviewed the case and prepared a proposed notice of deficiency, which was then forwarded to the office of the Manhattan Area Counsel, in the Office of Chief Counsel, for review.[5]

General Attorney Gerard Mackey (GA Mackey), an Area Counsel docket attorney, reviewed the proposed notice of deficiency. In a memorandum, GA

_____

[4](...continued)

> (e.) timely and accurately completing post-examination case requirements such as issuance of Statutory Notices of Deficiency, preparation of TEFRA letter packages and consideration of interest abatement claims;
>
> (f.) serving as a liaison for Counsel and Appeals, * * *

In particular, Technical Services "[r]eviewers are responsible for the review of selected examinations conducted by examiners within the Examination function * * *. Assignments also include * * * preparing statutory notices of deficiency". Id. pt. 4.8.1.4.

In Graev v. Commissioner (Graev II), 147 T.C. ___, ___ (slip op. at 17) (Nov. 30, 2016), we said that RA Feld had prepared the first proposed notice of deficiency. In accord with the parties' agreed clarifications, we now correct this earlier finding: Technical Services, and not RA Feld, prepared the first proposed notice of deficiency.

[5]This process accords with the IRM requirement that cases meeting certain criteria be reviewed by Area Counsel before the notice of deficiency is sent out. In particular, if the sum of the deficiency and penalties for any year is over $250,000, Area Counsel's review is mandatory. IRM pt. 4.8.9.7.1(6) (Dec. 1, 2006). Because the sum of the deficiency and penalties computed in the Graevs' proposed notice of deficiency was over $250,000 for both 2004 and 2005, review of their case by Area Counsel was required.

Mackey approved the proposed notice of deficiency but directed that an alternative penalty position be added, namely, section 6662(a) accuracy-related penalties computed at the 20% rate and applied to the portions of the 2004 and 2005 underpayments attributable to disallowance of petitioners' noncash charitable contribution deduction and carryover deduction (alternative noncash contribution penalties).[6] GA Mackey's memorandum was approved in writing by his immediate supervisor, Associate Area Counsel Robert Baxer (AAC Baxer).[7]

After AAC Baxer approved the alternative penalty position, GA Mackey's memorandum was sent to Manhattan Technical Services, where a Technical

---

[6]As discussed in <u>Graev II</u>, the notice of deficiency shows zero amounts for the alternative noncash contribution penalties because they were an alternative position to the primary noncash contribution penalties.

[7]Supplemental stipulation of facts No. 104 states: "The Area Counsel Memorandum is not signed by Gerard Mackey's immediate supervisor." The immediately following stipulations, however, clarify respondent's position that GA Mackey's immediate supervisor, AAC Baxer, gave his written approval by initialing (rather than by signing) GA Mackey's Area Counsel Memorandum, pursuant to procedures specified in certain administrative orders. Consistent with this position, in his opening brief filed March 31, 2015, respondent proposed as findings of fact that (1) for purposes of sec. 6751(b), AAC Baxer was GA Mackey's immediate supervisor and (2) AAC Baxer approved the assertion of the alternative noncash contribution penalty by initialing GA Mackey's memorandum. In their responsive briefs petitioners have not disputed the first point; they state that they do not object to the second point. We therefore find that for purposes of sec. 6751(b) AAC Baxer was GA Mackey's immediate supervisor and gave his written approval of GA Mackey's direction regarding the alternative noncash contribution penalty by initialing GA Mackey's Area Counsel Memorandum.

Services employee added the changes proposed by GA Mackey to the notice of deficiency.[8]  This procedure was consistent with Internal Revenue Manual (IRM) pt. 4.8.9.7.2 (Oct. 30, 2004), which states:

> (1) If Area Counsel suggests changes to the proposed notice, the following actions will be taken.
>
> > (1.) Area Counsel will provide written directions and guidance on how to perfect the notice.
> >
> > (2.) Examination[9] will consider Area Counsel's proposed changes and modify the notice as directed, if in agreement.
> >
> > (3.) Disagreements will be initially discussed between the Area Counsel attorney providing advice and the Technical Services Group Manager.

---

[8]In Graev II, 147 T.C. at __ (slip op. at 18), we said that GA Mackey's proposed changes were sent back to RA Feld.  We now revise our factual finding to accord with clarification from the parties.  We find that GA Mackey's proposed changes were not sent back to RA Feld; i.e., they were not sent back to the original examination unit.  They were sent back to Technical Services.

[9]We note that this passage from IRM pt. 4.8.9.7.2 (Oct. 30, 2004) indicates that suggested changes are to be considered by "Examination".  The IRM includes Technical Services under Part 4, "Examining Process", even though some of the functions it carries out are described as "post-examination".  See, e.g., id. pt. 4.8.1.4(1) (Oct. 1, 2003).  In any event, the parties agree that the changes proposed by GA Mackey were added to the proposed notice of deficiency by a Technical Services employee, and nothing in the record suggests otherwise.  Moreover, the current version of the IRM clarifies that suggested changes to the proposed notice are considered by a Technical Services reviewer and not by the revenue agent who initially conducted the examination.  Id. pt. 4.8.9.9.2.2 (July 9, 2013).

(4.) An override of Area Counsel's advice must be done in writing by means of an Area Director memorandum outlining the reasons for not following Area Counsel's recommendations.

(2) All written communications to/from Area Counsel should be kept in the case file.

After the suggested changes were added by a Technical Services employee, the notice of deficiency was signed by Technical Services Territory Manager Deborah Bennett and sent to petitioners. The notice of deficiency included both the primary noncash contribution penalties first proposed by RA Feld (which respondent has since conceded) and the alternative noncash contribution penalties first proposed by GA Mackey, all relating to disallowance of the noncash charitable contribution deduction. The notice of deficiency listed no penalties with respect to disallowance of the cash charitable contribution deduction.

On October 6, 2014, after Graev I had been released, respondent's attorney, Shawna A. Early, filed an amendment to answer, asserting section 6662(a) accuracy-related penalties for 2004 and 2005, as computed at the 20% rate.[10] The

---

[10]On brief respondent explains that he had originally intended to raise the penalty in an amendment to answer only if the Court granted petitioners' motion for partial summary judgment, filed April 14, 2014, in which petitioners sought a ruling that the sec. 6662(a) penalties are barred by sec. 6751(b). After respondent made this plan known, however, on August 12, 2014, the Court ordered that any party intending to move for leave to amend its pleading should do so forthwith

(continued...)

amendment to answer both reasserted the alternative noncash contribution penalties included in the notice of deficiency and asserted for the first time section 6662(a) penalties, computed at the 20% rate, with respect to the <u>cash</u> charitable contribution deduction and carryover deduction (we will refer to the latter penalties as the cash contribution penalties).[11]  In the amendment to answer, respondent alleges (with respect to both the alternative noncash contribution penalties and the cash contribution penalties) that the 2004 and 2005 underpayments are attributable to negligence or disregard of rules or regulations, <u>see</u> sec. 6662(b)(1), (c), and to substantial understatements of income tax, <u>see</u> sec. 6662(b)(2), (d).[12]  The parties agree that Ms. Early made the initial determination

---

[10](...continued)
without awaiting the Court's ruling on petitioners' motion for partial summary judgment.

[11]Curiously, the amended answer asserts that the underpayments attributable to disallowance of <u>both</u> the cash and noncash charitable contribution deductions are $190,212 and $155,943 for 2004 and 2005, respectively--the same amounts that were used to compute the <u>noncash</u> contribution penalties in the notice of deficiency.  The record does not clarify this apparent anomaly.  In any event, neither party has argued that the amounts of the 2004 and 2005 underpayments as asserted in the amended answer are incorrect, and we deem both parties to have waived or conceded any arguments to the contrary.  Moreover, in the Rule 155 computations we will expect the 20% penalties to be computed in a manner that is consistent with the amounts listed in the amended answer.

[12]Like the amended answer, the notice of deficiency also listed negligence
(continued...)

of the cash contribution penalties and that the amendment to answer was approved in writing by her immediate supervisor, Associate Area Counsel Lydia A. Branche.

## Discussion

As noted, respondent has conceded that petitioners are not liable for 40% gross valuation misstatement penalties under section 6662(h). Respondent maintains, however, that section 6662(a) accuracy-related penalties as computed at the 20% rate apply to the portions of petitioners' 2004 and 2005 underpayments attributable to disallowance of both the noncash and cash charitable contribution deductions. Petitioners assert that assessment of these accuracy-related penalties is barred because respondent has failed to comply with the supervisory approval requirements of section 6751(b), which provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

---

[12](...continued)
or disregard of rules or regulations and substantial understatements of income tax as grounds for the alternative noncash contribution penalties.

I.  Section 6751(b) in Deficiency Cases

Having considered the opinion of the Court of Appeals for the Second Circuit in Chai, and in the interest of repose and uniformity on an issue that touches many cases before us, we reverse those portions of Graev II which held that it was premature to consider section 6751(b) issues in this deficiency proceeding.  Accordingly, in this Opinion we consider the merits of petitioners' section 6751(b) argument.[13]

Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of an individual for any penalty.  To satisfy this burden the Commissioner must present sufficient evidence to show that it is appropriate to impose the penalty in the absence of available defenses.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

In the light of our holding that compliance with section 6751(b) is properly at issue in this deficiency case, we also hold that such compliance is properly a part of respondent's burden of production under section 7491(c).[14]  For the reasons

_____

[13]In Graev II we did not consider the sec. 6751(b) issues we address in this Opinion, but we held for respondent on all other issues relating to the penalties. We incorporate those holdings by this reference.  Accordingly, the only issue for decision in this Opinion is whether respondent has complied with sec. 6751(b).

[14]In Chai v. Commissioner, 851 F.3d 190 (2d Cir. 2017), aff'g in part, rev'g

(continued...)

discussed below, we conclude on the basis of a preponderance of evidence in the record that respondent has satisfied the requirements of section 6751(b).

## II. Alternative Noncash Contribution Penalties

Respondent argues that the requirement of section 6751(b)(1) has been met with respect to the alternative noncash contribution penalties because GA Mackey

---

[14](...continued)
in part T.C. Memo. 2015-42, the Court of Appeals for the Second Circuit suggested that the Commissioner also bears the burden of proof, in addition to the burden of production, with respect to sec. 6751(b) issues. The court said: "compliance with § 6751(b) is part of the Commissioner's burden of production and proof". Id. at 221. As support for this statement the court pointed to sec. 7491(c), which places on respondent the burden of production (rather than the burden of proof) for any penalty under the Code. Then Chai says: "It is incumbent on the Commissioner, in order to meet his burden of production, to 'come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty.'" Id. at 222 (emphasis added) (quoting Higbee v. Commissioner, 116 T.C. 438, 446 (2001)). Subsequently, however, Chai states that "§ 6751(b)(1) written approval is an element of a penalty claim and therefore the Commissioner's burden to prove". Id. at 222.

We are left in some doubt whether Chai meant to impose upon the Commissioner the burden of proof or just--as provided in sec. 7491(c)--the burden of production. In any event, because we conclude that respondent satisfied the sec. 6751(b) requirement on the basis of the preponderance of evidence and without reference to the placement of the burden of proof, we need not and do not decide in this case the precise contours of Chai's holding in this regard or the extent to which we should follow it in cases appealable to other Courts of Appeals.

made the initial determination, which was approved in writing by his immediate

supervisor, AAC Baxer.[15] We agree.

GA Mackey was the first person to recommend or direct inclusion of the

alternative noncash contribution penalties, and as described more fully below, he

had the authority to do so. GA Mackey's recommendation as to the alternative

noncash contribution penalties (like RA Feld's recommendation as to the primary

noncash contribution penalties) was reviewed by his immediate supervisor,

approved, and forwarded to Technical Services. Technical Services reviewed GA

Mackey's recommendation and added his recommendation to the notice of

deficiency.

Neither party has argued that anyone other than GA Mackey made the initial

determination of the alternative noncash contribution penalties, nor does the

record support such a finding.[16] Therefore, we conclude that GA Mackey's

---

[15]Respondent also raises two alternative arguments, namely (1) that approval of the primary noncash contribution penalties in the notice of deficiency sufficed as approval of the alternative noncash contribution penalties; and (2) that even if the alternative noncash contribution penalties as included in the notice of deficiency were not properly approved, they were properly raised anew in his amendment to answer. Because we hold for respondent on the argument described above, we need not and do not address these alternative arguments.

[16]Neither party has argued that the Technical Services reviewer made the initial determination of the alternative noncash contribution penalties, and the

(continued...)

recommendation was the initial determination of the alternative noncash contribution penalties for 2004 and 2005. The parties agree that GA Mackey's recommendation was approved in writing by his immediate supervisor. Consequently, the requirement of section 6751(b) is satisfied with respect to the alternative noncash contribution penalties for 2004 and 2005.

Petitioners' arguments against this conclusion all relate to whether GA Mackey had the authority to make an initial determination. Although petitioners concede that attorneys in the Office of Chief Counsel can <u>sometimes</u> make an initial determination of penalties, they contend that attorneys in the Office of Chief Counsel <u>never</u> have authority to make the initial determination of a penalty if it is included in a notice of deficiency.

As support for this conclusion, petitioners point to a statement in <u>Chai v. Commissioner</u>, 851 F.3d at 221, that section 6751(b)(1) "requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty."

---

[16](...continued)
record does not support any such finding. Similarly, neither party has expressly argued that RA Feld--or any other examination agent--made the initial determination of the alternative noncash contribution penalties, nor does the record support any such finding. As previously noted, GA Mackey's recommendation of the alternative noncash contribution penalties was never returned to respondent's Examination Division.

Petitioners construe this statement to mean that "penalties can be initially determined by the Commissioner in a notice of deficiency, or by IRS Chief Counsel * * * if the penalties are not included in the notice of deficiency". Petitioners conclude that because the alternative noncash contribution penalties appeared in the notice of deficiency, GA Mackey lacked the authority to make the initial determination of those penalties.

We disagree. First, although our analysis does not turn on the exact meaning of the sentence just quoted from Chai, we understand it to be addressed to the timing of supervisory approval rather than to the manner in which, or by whom, an initial determination might be made. Second, nothing in the text or legislative history of section 6751(b) suggests that identification of the person who made the initial determination of a penalty should turn upon the penalty's inclusion or noninclusion in a notice of a deficiency.[17]

Petitioners assert further that (1) the Office of Chief Counsel may serve only in an advisory capacity until such time as proceedings are commenced in this Court; and that (2) an initial determination cannot take the form of advice.

---

[17]By its terms sec. 6751(b) applies to the assessment of all penalties under "this title"--i.e., title 26, the Internal Revenue Code. This encompasses not only penalties subject to deficiency procedures but a great many so-called assessable penalties in subch. B of ch. 68, secs. 6671 through 6725, which are generally not subject to deficiency procedures.

Again, we disagree. Section 7803(b)(2) provides that the "Chief Counsel shall be the chief law officer for the Internal Revenue Service and shall perform such duties as may be prescribed by the Secretary, including * * * [a list of duties]." Section 7701(c) specifies that "[t]he terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." Accordingly, the Secretary may assign duties to the Office of Chief Counsel that are not included on the section 7803(b)(2) list, including the duty to review proposed notices of deficiency and suggest changes. As described above, IRS procedures clearly assign review of certain proposed notices of deficiency, including the one in this case, to the Office of Chief Counsel. See IRM pt. 4.8.9.7.1(6) (Dec. 1, 2006).

We also disagree with petitioners' contention that an initial determination cannot take the form of advice.[18] The distinction petitioners seek to draw between "advice" and an "initial determination" lacks any firm basis in the statute. Any "initial determination" governed by section 6751(b), whether made by an examining agent or a chief counsel attorney, is mere advice until it receives the

_____

[18]Although we do not view the parties' terminology as dispositive in this regard, we note that the parties have stipulated that GA Mackey, in his September 12, 2008, Area Counsel Memorandum, "directed"--rather than merely recommended or advised--that the alternative noncash contribution penalty be added to the notice of deficiency.

requisite supervisory approval and is finalized by the Commissioner or one of his agents. The word "initial" connotes as much.

It is true that Technical Services reviewed GA Mackey's recommendation of the alternative noncash contribution penalties. But Technical Services also reviewed RA Feld's recommendation of the primary noncash contribution penalties. The review by Technical Services no more diminished the status of GA Mackey's recommendation as the initial determination of the alternative noncash contribution penalties than it diminished the status of RA Feld's recommendation as the initial determination of the primary noncash contribution penalties. To the contrary, the Commissioner's established procedures suggest that it is more difficult for Technical Services to override Area Counsel recommendations than it would be to override any initial determination made by an examining agent.[19]

Petitioners suggest that attorneys in the Office of Chief Counsel cannot be assigned to review proposed notices of deficiency because that might lead to a

---

[19]Whereas a Technical Services <u>manager</u> can override the initial determinations of an examining agent by returning the case to examination, <u>see</u> IRM pt. 4.8.2.9(1)(e) (Oct. 1, 2003) (requiring only manager approval to return a case to examination), the IRM specifies that any override of Area Counsel's recommendation must be in writing in an area <u>director</u> memorandum (i.e., an official above the manager level), <u>see id.</u> pt. 4.8.9.7.2 (Oct. 30, 2004). The record contains no such area director memorandum or other indication that Technical Services sought to override GA Mackey's recommendation.

situation in which the lawyer representing the Commissioner before this Court would have to withdraw in order to testify as a witness with respect to section 6751(b) issues. Petitioners' premise appears to be that the Chief Counsel attorney who makes the initial determination will also represent the Commissioner in a related proceeding before this Court. Respondent counters that this premise is not only untrue generally but is also untrue in this case, since the attorney who reviewed the notice of deficiency, GA Mackey, is not the same attorney representing respondent in this case. In any event, we agree with respondent that the Tax Court Rules of Practice and Procedure, like the ABA Model Rules of Professional Conduct, provide a solution for any such potential conflict; the attorney could withdraw or take other necessary steps to obviate any conflict of interest. See Rule 24(g).

Petitioners also posit that "[i]f this Court recognizes Chief Counsel attorneys as authorized to make the initial determination to assert a penalty in a notice of deficiency, the Court would invite discovery disputes and motions to compel seeking to discover historically privileged communications between the Commissioner, the Chief Counsel, and their respective delegates." As this case presents no privilege issue, we decline to opine on any such matter. We note,

however, that it is respondent's attorney-client privilege that petitioners assert we ought to protect, and respondent has not raised a similar concern.

For the reasons described above, we find that GA Mackey's recommendation was the initial determination to assess the alternative noncash contribution penalties. The parties agree that his recommendation was approved in writing by his immediate supervisor. Accordingly, we hold that respondent has met his burden to show that the requirement of section 6751(b) was met with respect to the alternative noncash contribution penalties.

## III. Cash Contribution Penalties

The parties agree, as described above, that the cash contribution penalties were initially determined by Shawna A. Early and approved in writing by her immediate supervisor, Associate Area Counsel Lydia A. Branche. Accordingly, respondent has met his burden to show that the requirement of section 6751(b) was met with respect to the cash contribution penalties.[20]

---

[20]Once the Commissioner's burden of production is met, the taxpayer has the burden of proof with respect to defenses, Higbee v. Commissioner, 116 T.C. at 446, except that if the Commissioner pleads a new matter, an increase in deficiency, or an affirmative defense in the answer, the burden of proof is on the Commissioner, Rule 142(a). As noted, see supra note 13, we do not reconsider defenses in this Opinion. We do, however, clarify the burden of proof applied in Graev II with respect to the cash contribution penalties, for the sake of completeness.

(continued...)

IV. Conclusion

We hold that respondent has met his burden to show that section 6751(b) is satisfied with respect to the 20% accuracy-related penalties as asserted in the notice of deficiency and in the amended answer. In Graev II we held for respondent on all other issues relating to these penalties. Petitioners are therefore liable for accuracy-related penalties under section 6662(a) for 2004 and 2005

---

[20](...continued)
Respondent pleaded the cash contribution penalties for the first time in the amended answer. As noted supra note 11, the underpayments listed in the amended answer are equal to the underpayments in the notice of deficiency, meaning that respondent's amended answer increases neither the deficiency nor the 20% penalties. Consequently, the burden of proof rests on respondent only if the cash contribution penalty theory is a new matter.

"The assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency is not a new matter requiring the shifting of the burden of proof." Achiro v. Commissioner, 77 T.C. 881, 890 (1981). Before Graev II, petitioners contended that "[r]espondent presents no new theory regarding the accuracy-related penalties realleged in the amendment to answer that might qualify as a new matter." Accepting petitioners' argument, we deem petitioners to have waived or conceded any argument that the amended answer presented a new matter. Neither party has urged a different approach in five rounds of briefing.

In any event, the notice of deficiency provided notice of all issues relevant to the penalties as asserted in the amended answer. And any defenses to the cash contribution penalties required no additional evidence beyond what was required to defend against the noncash contribution penalties because the cash and noncash contributions were part of the same transaction. Therefore, we conclude that even if petitioners had not conceded the issue, the amended answer raised no new matter.

equal to 20% of the underpayments attributable to disallowance of both the cash and noncash charitable contribution deductions, as described above.

To reflect the foregoing and the holdings in Graev I and Graev II not specifically reversed in this Opinion,

Decision will be entered

under Rule 155.

Reviewed by the Court.

MARVEL, GALE, PARIS, KERRIGAN, LAUBER, NEGA, PUGH, and ASHFORD, JJ., agree with this opinion of the Court.

LAUBER, J., concurring:  I join the opinion of the Court without reservation.  I write separately in response to Judge Buch's dissent in part.

First, I think Judge Buch errs in focusing on the scope of authority possessed by the IRS official who first proposes that a penalty be asserted.  As the Court of Appeals for the Second Circuit explained in Chai v. Commissioner, 851 F.3d 190, 219 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42, Congress' purpose in enacting section 6751(b)(1) was to help ensure "that penalties [w]ould only be imposed where appropriate and not as a bargaining chip."  We should construe the phrase "initial determination of such assessment" in light of that purpose.

As Judge Holmes observes in his concurrence, see Holmes op. p. 31, the phrase "initial determination of * * * [an] assessment" appears no place else in the Code.  It is what scholars of ancient Greek call a "hapax legomenon," a word or phrase that occurs only once in a document or corpus.  See https://en.wikipedia. org/wiki/Hapax_legomenon.  This phrase is surely ambiguous, as the Court of Appeals found.  See Chai, 851 F.3d at 218.  But I think it is worse than ambiguous; it is an oxymoron, because while "one can determine a deficiency * * * and whether to make an assessment, * * * one cannot 'determine' an 'assessment.'"

Id. at 218-219 (quoting Graev v. Commissioner, 147 T.C. __, __ (slip op. at 85) (Nov. 30, 2016) (Gustafson, J., dissenting)).

When dealing with an oxymoron, resorting to highly technical distinctions is unlikely to be the right path. Judge Buch insists, see Buch op. pp. 75, 76, 78, that an IRS officer cannot make the initial determination of an assessment unless he or she has the technical authority "to make a penalty determination" or to "issue a notice of deficiency." But neither section 6751(b) nor its legislative history refers to the technical scope of authority possessed by the person who first proposes a penalty. Congress was concerned about the bigger picture: It desired to prevent rogue IRS personnel from using penalties as leverage to extract concessions from taxpayers.

Needless to say, a rogue IRS employee can use penalties as leverage to extract concessions from taxpayers regardless of whether he or she has the technical authority to "make a penalty determination" or to "issue a notice of deficiency." By engaging in an investigation of Attorney Mackey's authority, Judge Buch disserves Congress' purpose. Under Judge Buch's approach, an IRS official would be free to use penalties as a battering ram against taxpayers, without obtaining supervisory approval under section 6751(b), so long as he lacked authority to do

what he was doing. Having expressed concern about IRS personnel "going rogue," Congress is unlikely to have intended the statute to be applied in this way.

The Court adopts a more sensible approach. It treats the "initial determination of such assessment" as referring to the action of the IRS official who first proposes that a penalty be asserted. This is a reasonable construction of the statute, giving primacy to the word "initial" (a term that appears in the statute) rather than to the penalty-asserter's scope of authority (a term that does not appear). And by requiring supervisory approval the first time an IRS official introduces the penalty into the conversation, the Court's interpretation is faithful to Congress' purpose by affording maximum protection to taxpayers against the improper wielding of penalties as bargaining chips.

Second, to the extent Attorney Mackey's authority is relevant, I think he had the requisite authority. As the Court explains, see op. Ct. p. 19, Chief Counsel attorneys have authority to review draft notices of deficiency and recommend changes. The parties have stipulated that Attorney Mackey "directed" that the 20% noncash penalty be added to the notice of deficiency.

Judge Buch does not adequately explain why a recommendation or direction of this sort cannot serve as "the initial determination" of the assessment of a penalty. Attorney Mackey took the first step that could ultimately lead to assessment of

the penalty; but for his action, it is quite possible that the penalty would never be assessed. It seems perfectly natural to conclude that his action, although not final, constituted "the initial determination" with respect to this penalty.

Judge Buch notes that "determine" is defined to mean "fix conclusively or authoritatively" or "to settle or decide [a question] by an authoritative or conclusive decision." But he loses sight of the statutory language, which refers to an initial determination that is subject to supervisory approval. Needless to say, an initial action that is subject to approval by others cannot be an "authoritative or conclusive decision." Rather, an "initial determination" is logically read to mean a preliminary or tentative decision, which is exactly what Attorney Mackey made when he recommended or directed that the penalty be added to the notice of deficiency. Treating Attorney Mackey's recommendation or advice as "the initial determination" concerning assessment of the penalty is perfectly consistent with the statute.[1]

---

[1]It is true that the Technical Services person who processed the notice of deficiency could have rejected Attorney Mackey's recommendation. But the same is true when any IRS officer proposes a penalty, because that preliminary decision must receive supervisory approval under section 6751(b). The nonfinal nature of Attorney Mackey's recommendation supports its character as an "initial determination."

Rejecting that commonsense construction, Judge Buch would apparently regard the "initial determination of * * * [the] assessment" to have been made here by the IRS person in Technical Services who had the authority to issue (and did issue) the notice of deficiency. But the notice of deficiency represented the final IRS decision to assert the penalty. Unless the initial and final decisions to assert the penalty are thought to be identical, someone else must have made the "initial determination." The most logical candidate for the latter role would seem to be Attorney Mackey.

Finally, consider Judge Buch's proposed construction from the standpoint of Congress' purpose. Requiring supervisory approval at the end of the IRS examination, when the notice of deficiency is issued, will accomplish nothing if improper leverage has already been applied. The Court wisely avoids this risk by insisting that supervisory approval be secured earlier, viz., at the time when an IRS officer proposes for the first time that a penalty be asserted. This construction of section 6751(b) is faithful to the statute and to the intent of the Congress that enacted it.

MARVEL, THORNTON, PUGH, and ASHFORD, <u>JJ</u>., agree with this concurring opinion.

HOLMES, J., concurring in the result only:  Our Court has for decades had the power, when we have jurisdiction over a particular taxpayer for a particular tax year, to determine or redetermine the correct amount of his deficiency--including any penalties.  See sec. 6214(a).  The particular penalties we determine are almost always those raised in a notice of deficiency or the parties' pleadings, but we ourselves can impose a penalty on a misbehaving taxpayer *sua sponte*.  See sec. 6673(a).

This case is about the effect of a different Code section on cases within our jurisdiction.  Here's section 6751(b)(1):

> No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

And the holding of the Second Circuit in Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42, that we more or less adopt today:

> [W]e hold that § 6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty.

In that vein, we further hold that compliance with § 6751(b) is part of the Commissioner's burden of production and proof in a deficiency case in which a penalty is asserted.

Section 6751 has been in the Code for nearly twenty years. Adopting this reading as our own, and rolling it out nationwide, amounts to saying that we have been imposing penalties unlawfully on the tens of thousands--perhaps hundreds of thousands--of taxpayers who have appeared before us in that time. It is quite a counterintuitive result to those with a working knowledge of tax vocabulary and procedure; it will have unintended and irrational consequences unless corrected by additional appellate review or clarifying legislation; it is contrary to the text of the Code, whether viewed by itself or in light of a seemingly applicable canon of construction--and I predict it will even end up harming taxpayers unintentionally.

## I.

Everyone can agree that section 6751(b)(1)'s wording is unusual; the phrase "initial determination of such assessment" appears no place else in the Code. The Second Circuit thought the language was ambiguous, and so construed it to advance what it found to be its *purpose*--"that penalties should only be imposed where appropriate and not as a bargaining chip." See Chai, 851 F.3d at 218-19 (quoting S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601). This then led to its holding: "[I]nitial determination of such assessment" will now mean initial

penalty determination that is included in the notice of deficiency (or an answer or amended answer).  Id. at 220.

Because this case is appealable to the Second Circuit, we're bound by its decision in Chai.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  That's all we need to say.  Instead, "in the interest of repose and uniformity," we've decided to adopt this reading as our own.

Because the majority opinion springs from Chai, I begin with a closer look at the Second Circuit's analysis, and my concerns about its use of tax terminology. I will then warn about some foreseeable problems that today's Opinion will cause and proceed to analyze the text of the Code, by itself and with a traditional canon of construction, to suggest a solution to these problems.

A.

In Chai, as here, the IRS determined an accuracy-related penalty.  See 851 F.3d at 194.  The case proceeded to our Court, where Chai argued in posttrial briefing that the Commissioner had failed to satisfy his burden of production on the penalty under section 7491(c) because he hadn't introduced evidence at trial of his compliance with section 6751(b)(1).  Id. at 195, 215.  We said this argument wasn't timely--the trial was over.  See id. at 195, 216.  Chai appealed to the Second Circuit.  See id.

The Commissioner argued for the first time on appeal that it was premature to consider compliance with section 6751(b)(1) because the penalty had not yet been assessed. Id. at 216. The Second Circuit therefore needed to decide *when* the Commissioner is obliged to comply with the written-approval requirements of section 6751(b)(1). Id. It also asked whether the Commissioner must show that he complied with section 6751(b)(1) to meet his burden of production under section 7491(c). Id. at 217.

That court began with the text of section 6751(b)(1). Id. at 217-18. It considered the Code's definitions of "assessment" ("the formal recording of a taxpayer's tax liability on the tax rolls") and "deficiency" ("a tax liability greater than what the taxpayer reported on his return"). Id. at 218. And it reasoned that the mismatch of verb and noun made section 6751(b)(1) "unworkable: [O]ne can determine a deficiency * * * and whether to make an assessment, but one cannot determine an assessment." Id. at 218-19 (internal citations omitted) (internal quotations omitted).

Unlike the majority of the Court in Graev v. Commissioner, 147 T.C. __, __ (Nov. 30, 2016) (Graev II) (slip op. at 27-29), it therefore concluded that the phrase "initial determination of such assessment" was ambiguous. Chai, 851 F.3d at 218. Faced with ambiguity, the Chai Court reached for the legislative history

"to discern Congress's *meaning*." Id. at 219 (quoting United States v. Gayle, 342 F.3d 89, 93 (2d Cir. 2003)) (emphasis added). But the court didn't mean "meaning" in the sense of the definition of a word, but instead in the sense of discerning Congress's "purpose" and "intent". See id. It found what it was looking for in the Senate Finance Committee report: "'[P]enalties should only be imposed where appropriate and not as a bargaining chip.'" Id. (quoting S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601). It also looked to the hearings that preceded enactment: These showed that the "statute was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." Id. (citing IRS Restructuring: Hearings on H.R. 2676 Before the S. Comm. on Finance, 105th Cong. 92 (1998) (statement of Stefan F. Tucker, Chair-Elect, Section of Taxation, American Bar Association)). Our construction of the statute in Graev II, the Second Circuit thought, frustrated that purpose because it "would do nothing to stem the abuses § 6751(b)(1) was meant to prevent." Id. This is true, the court reasoned, despite the safeguard that we identified with respect to the penalties at issue--that Tax Court's preassessment review protected against these penalties being used as bargaining chips. Id. The court said: "Tax Court review does not solve the problem–penalties could still be used as bargaining chips to

prompt settlement negotiations and, if successful, the Tax Court would be none the wiser." Id. at 219-20.

Because section 6215(a) requires the IRS to assess any deficiency redetermined by the Tax Court, the Chai Court also reasoned that for section 6751(b)(1) to have any teeth, supervisory approval for penalties must be obtained before the Tax Court's decision becomes final. Id. at 220. But even that isn't enough, because section 6751(b)(1) refers to "the *initial* determination of such assessment." Id. That can't be after our Court's determination, so "the last moment the approval of the initial determination actually matters is immediately before the taxpayer files suit (or penalties are asserted in a Tax Court proceeding)." Id. at 221. To achieve its understanding of the congressional purpose for the section, the court held that "initial determination of such assessment" in section 6751(b)(1) really means the initial penalty determination that is included in the notice of deficiency (or an answer or amended answer). See id. It also held that proof of compliance with section 6751(b)(1) "is part of the Commissioner's burden of production *and proof* in a deficiency case in which a penalty is asserted." Id. (emphasis added).

Because the Commissioner had the burden to prove that he complied with section 6751(b) as part of his "*prima facie* penalty case," it was appropriate for

Chai to argue even after the trial that the Commissioner had failed to meet that burden, because whether a party has failed to make out a *prima facie* case is a question of law. Id. at 222. The record showed no evidence that the Commissioner complied with section 6751(b), which meant that the court would not sustain the penalties. Id. at 223.

B.

I agree that understanding section 6751 "requires proficiency with the deficiency process." Id. at 218. And while Chai correctly defined the relevant terms, it later misused them.

An "assessment" is the formal recording of a tax liability in the records of the IRS. Sec. 6203. The tax that is "assessed" might have been self-reported on a tax return, see sec. 6201(a)(1), or it might result from the determination by the Commissioner of a "deficiency," see secs. 6213, 6215. "Liability" for a tax or penalty, however, has nothing to do with IRS records--it is fixed by the Code sections that impose the tax or penalty. See, e.g., United States v. Kelley, 539 F.2d 1199, 1203 (9th Cir. 1976). A "deficiency" is the amount by which a taxpayer's true tax liability under the Code exceeds the tax liability that he reported on his return. See sec. 6211(a). So, to put it all together, the Code imposes a "liability" for a tax or penalty; a taxpayer creates a "deficiency" if he

reports less than his "liability" on his return; and the Commissioner can "assess" a liability greater than a taxpayer reported on his return if there is a "deficiency". That "assessment" is the act of recording the "liability" in the IRS's records.

The Tax Court has jurisdiction to redetermine *some* penalties that are part of a deficiency--and in some cases, even before the IRS can assess them. See secs. 6213(a), 6665. But one thing that is missing from Chai's analysis is that a large majority of penalties in the Code can be determined *and* assessed by the IRS without Tax Court review--and without any preassessment court review whatsoever. See, e.g., secs. 6672-6725 (imposing "assessable" penalties for which there are, with limited exceptions, no preassessment court review); see also Smith v. Commissioner, 133 T.C. 424, 428-30 (2009) (discussing the Tax Court's limited jurisdiction to review "assessable" penalty determinations). And even when the IRS determines penalties attributable to a deficiency--such as the accuracy-related penalties at issue in Chai and here--it can assess those penalties without Tax Court review if the taxpayer decides not to litigate. See sec. 6213(a) (allowing assessment after 90 or 150 days if no Tax Court petition is filed).

I agree that the IRS's determination of penalties that our Court does not review *is* effectively a determination to assess them; a plain reading of section 6751(b) would certainly require supervisory approval of those penalty

*assessments*. But that doesn't make them all unreviewable. The Code gives courts jurisdiction to review some of these penalties after assessment. We ourselves have jurisdiction to review the validity of assessments in collection due process cases, see sec. 6330(c)(1), (d)(1), and the District Courts and Court of Federal Claims have jurisdiction to review penalties after the IRS assesses them if a taxpayer pays up and sues for a refund, see sec. 7422(a).

But deficiency cases that come to us are different because there has been no assessment.[1] The only way to make section 6751 applicable to these cases is to confuse the terms "deficiency" and "assessment". In this case, as in Chai, the IRS determined a deficiency, and then we got the case because the taxpayer filed a timely petition. At this point--once we have jurisdiction--the determinations of the IRS largely melt away. *We* are the ones who determine what the liability of a petitioner is under the Code; *we* are the ones who determine whether there is a deficiency; and *we* are the ones who determine what penalties, if any, a petitioner owes. See sec. 6214(a). We can even decide that a petitioner *over*paid his tax liability and order the Commissioner to refund the difference. See sec. 6512(b)(1).

---

[1] There is a limited exception for "jeopardy assessments." See sec. 6861. If the Commissioner believes assessment of a deficiency will be jeopardized by delay, he is authorized to assess before he even issues a notice of deficiency. See id.

The Code says that the Commissioner has to assess what *we* determine, not what he asserts we should determine at the beginning of a case. See sec. 6215(a). And the IRS isn't allowed to assess until our decision is final. Sec. 6213(a).

This all means that when we get a case, taxpayers get a new deal and their ability to raise any and all disputes about their liability for a particular tax year before us effectively devalues any bargaining chips the IRS thinks it might have. And if the IRS lays down any meritless chip, we can and will make the Commissioner ante up attorneys' fees and costs. See sec. 7430.

One can also see the problems in Chai's important second holding--that the Commissioner's obligation to produce written evidence of supervisory approval to assess is required to meet his burden under section 7491(c). See 851 F.3d at 221. That section by its terms doesn't have anything to say about penalties that the Commissioner assesses without litigation. It says that the Commissioner has the "burden of production *in any court proceeding* with respect to the *liability* of any individual for any penalty, addition to tax, or additional amount imposed by this title." Sec. 7491(c) (emphases added).

And here is where a closer reading of the text and a broader understanding of tax litigation ought to make a difference. As the majority and Chai implicitly acknowledge, liability for penalties--indeed, liability for tax of any kind--is fixed

by the Code sections imposing penalties and tax. See Chai, 851 F.3d at 217 (explaining that penalty "aris[es] under [section] 6662(a)"). "Assessment" is just a recording of the liability. See Hibbs v. Winn, 542 U.S. 88, 100 (2004); United States v. Galletti, 541 U.S. 114, 122 (2004) (assessment is "little more than the calculation or recording of a tax liability"). Liability "arises and persists whether *vel non* that tax is assessed." Principal Life Ins. Co. v. United States, 95 Fed. Cl. 786, 790-91 (2010); see also Kelley, 539 F.2d at 1203 ("liability is imposed by statute independent of any administrative assessment").

"Assessment" is not the same as the determination of a "deficiency". It is akin to the recording of a judgment--it empowers the IRS to start collection using administrative tools like liens and levies. But the Code empowers the Commissioner--like any other creditor--to collect taxes by suit, and he does not need to assess any liability before he comes to court. See sec. 6501(a) (referring to "proceeding in court without assessment for the collection of such tax"). The benefits of administrative collection and the ten-year statute for collecting assessed taxes make the assessment route the interstate highway of revenue raising; but though it's diverted almost all the traffic, it hasn't shut down the possibility of moseying along the footpath of lawsuit without assessment.

To show how <u>Chai</u> conflates liability and assessment, imagine a civil action under section 6501(a) for the penalty in this case. The Government would have the burden of production under section 7491(c), but if a taxpayer said "Yep, I was negligent; but you never got a second signature on the form; you lose," wouldn't the plain language of section 6751(b) make a judge rule against him ("No, *you* lose, I don't need an *assessment* to enter a judgment for the Government on the *liability*")? <u>See</u> <u>Principal Life Ins. Co.</u>, 95 Fed. Cl. at 806 ("To put it bluntly, * * * [the taxpayer] either owes the taxes in question or does not--the IRS's failure to assess them timely does not change that fact"). Well, section 6751(b) will now force the judge to rule for that taxpayer--a procedural restriction on assessment has been transformed into a protection in deficiency cases against liability for a penalty imposed by the Code.

That brings me to my next concern: <u>Chai</u> will cause significant confusion about the Commissioner's burden on penalties, because it holds that compliance with section 6751(b) "is part of the Commissioner's burden of production *and proof* in a deficiency case in which a penalty is asserted." <u>Chai</u>, 851 F.3d at 221 (emphasis added). This apparently followed its reading of section 7491(c), <u>see</u> <u>id.</u>, but it differs in a vital respect--which could affect later cases--by adding the burden of *proof* to the burden of *production*.

It's not uncommon for courts to use "burden of proof" to describe one or both of the evidentiary burdens of production and persuasion.  Other circuit courts have done just that in nonprecedential opinions that touched on section 7491(c). See Williams v. Commissioner, 120 F. App'x 289, 295 (10th Cir. 2005) (describing the burden imposed by section 7491(c) as the "burden of proof"), aff'g T.C. Memo. 2003-97; Rhodes v. Commissioner, 152 F. App'x 340, 342 (5th Cir. 2005) (stating that, under section 7491(c), "the Commissioner bears the burden of proof for showing that additional taxes are appropriate"), aff'g T.C. Memo. 2003-133.  But Chai actually holds that section 7491(c) places the burden of production *and the burden of proof* on the Commissioner.  851 F.3d at 221.

"The term 'burden of proof' is one of the 'slipperiest member[s] of the family of legal terms.'"  Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56 (2005) (quoting 2 John William Strong et al., McCormick on Evidence sec. 342, at 433 (5th ed. 1999)).  The Supreme Court explains that the confusion arises, in part, from the fact that "burden of proof" historically encompassed "burden of production" and "burden of persuasion."  Id.  "Burden of production"--the phrase in section 7491(c)--describes "which party bears the obligation to come forward with the evidence at different points in the proceeding."  Id.  "Burden of persuasion," on the other hand, describes "which party loses if the evidence is

closely balanced." Id. Courts are instructed, of course, to refer to the statute first when "determining the burden of proof under a statutory cause of action." Id. But, "[a]bsent some reason to believe that Congress intended otherwise," courts should conclude "that the burden of persuasion lies where it usually falls, upon the party seeking relief." See id. at 57-58.

Chai places both the burden of production *and the burden of persuasion* on the Commissioner. See 851 F.3d at 221. This is untenable. In response to a taxpayer's argument that the Commissioner "failed to satisfy * * * [his] burden of proof under section 6662," the Eleventh Circuit explained in Longino v. Commissioner, 593 F. App'x 965, 970 (11th Cir. 2014) (citing Higbee v. Commissioner, 116 T.C. 438, 447 (2001)), aff'g T.C. Memo. 2013-80, that "when the Service assesses a penalty under section 6662, it bears only the burden of production" and the taxpayer "must 'come forward with evidence sufficient to persuade a [c]ourt that the [Service]'s determination is incorrect.'" Sharp tax lawyers will now take advantage of this construction.

This holding in Chai is even less reasonable than its holding that the initial determination of assessment means the initial determination of a deficiency, see 851 F.3d at 221, because there is a well-developed body of caselaw for when the Commissioner *does* have both the burden of production and the burden of

persuasion for penalties.  Before today the rule was that he had to bear both these burdens about a penalty only when he raised it as a "new matter."  Rule 142(a).  And we have before today also included as part of the Commissioner's burden of persuasion (when he has it) the negation of any assertion of any defense to a penalty, such as a taxpayer's reasonable cause and good faith.  See, e.g., McMillan v. Commissioner, T.C. Memo. 2015-109, at *29 ("Because the accuracy-related penalty is a new matter, respondent must prove both the grounds for the penalty and the absence of reasonable cause or lack of good faith") (citing Rule 142(a) and Sanderling, Inc. v. Commissioner, 66 T.C. 743, 757 (1976), aff'd in part, rev'd in part on another matter, 571 F.2d 174 (3d Cir. 1978)).  Chai's broader and unexplained addition of the "burden of proof" to the phrase "burden of production" in section 7491(c), see 851 F.3d at 221, may have a more powerful effect on penalty cases than anyone realizes:  Does the Commissioner now need to prove that taxpayers don't have a valid defense to penalties (e.g., reasonable cause)?  The majority doesn't clarify this in our Opinion today.  And stirring up even more confusion, the Second Circuit said that the "written-approval requirement--as a mandatory, statutory element of a penalty claim--is distinct from affirmative defenses based on 'reasonable cause, substantial authority, or a similar provision,' which need be raised by the taxpayer."  Id. at 222 n.26.  Does this now

mean that the phrase "burden of proof" means something different in penalty cases from what it does in cases where the Commissioner has to bear it because he raises a new matter? And what do we now do when the Commissioner asks for a penalty for the first time after a case is under way before us--when the penalty is a new matter and section 6751 now governs what he has to show?

## II.

In the interest of "repose", the majority has nevertheless adopted <u>Chai</u>'s purposivist construction of section 6751, and likewise adopted <u>Chai</u>'s identification of the relevant purpose--namely, to prevent the IRS from using the threat of penalties as bargaining chips. <u>See</u> 851 F.3d at 219. But the rewritten text will not let this Code section rest in peace--instead it will become "[l]ike some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad," and will serve only to frighten little children and IRS lawyers. <u>Lamb's Chapel v. Center Moriches Union Free Sch. Dist.</u>, 508 U.S. 384, 398 (1993) (Scalia, J., concurring).

Consider some hypotheticals:

1. Revenue Agent (RA) determines a penalty; Supervisor (S) disagrees and doesn't approve. The case goes to litigation. IRS Chief Counsel (CC) lawyer wants to amend his answer to assert the penalty; his IRS Chief Counsel Supervisor

(CCS) agrees. Was the "initial determination" the one made by RA, which didn't have supervisory approval? Who knows?

2. RA1 works on the file and fills out the penalty-approval form. He then goes on leave and the case is passed on to RA2. RA2 doesn't seek S's approval and decides not to determine a penalty in the notice of deficiency. Then, same as hypothetical 1, the case goes to litigation. CC lawyer wants to amend his answer to include the penalty, and his CCS agrees. Is RA1's determination the "initial determination," and, therefore, the only one that matters? Can there be more than one "initial" determination? Who knows?

3. RA is a trainee on probation. He was out the day the new RAs took a class on penalties. Noticing that RA's draft notices of deficiency never include penalties, S takes a closer look and is horrified to see a dozen notices for abusive tax shelters with no penalties. He tells RA to start including them. S doesn't get his own supervisor to approve this decision. RA redrafts the notices on his desk to determine penalties, which S then approves. Is S's instruction the "initial determination"? Who knows?

4. RA determines an accuracy-related penalty because he believes taxpayer's underpayment was attributable to "negligence"; S agrees, but tells RA to include a fallback position that the understatement was "substantial". S doesn't

get his own supervisor to approve this decision. Then, same as hypothetical 1, the case goes to litigation. We determine that taxpayer wasn't negligent, but his understatement was substantial. Is S's instruction regarding the fallback penalty position an "initial determination"? Who knows?

5. CC lawyer recommends a 40% gross-valuation penalty after that blowout of a deposition, but his CCS says: "You killed it, go for the 75% fraud penalty," and then the CCS's supervisor says: "Calm down, I only want you to go for the 20% negligence penalty." Which of these is the "initial determination"? Who's the supervisor who has to approve that determination in writing? Who knows?

6. CC lawyer cross-examines the petitioner so effectively that he blurts out: "So I committed fraud, what're you going to do about it?" Our Rules allow for issues to be tried by implied consent, and though they allow amendments to pleadings to conform to the proof, they also state that "failure to amend does not affect the result of the trial of these issues." Rule 41(b). Is our Opinion today a revocation of this part of the Rule? Who knows?

7. RA determines a penalty; we don't know whether S approved. Taxpayer receives a notice of deficiency, but decides not to litigate. The penalty is assessed 90 days later, and the IRS begins collection action. Taxpayer starts a

collection due process hearing, where the Appeals officer refuses to consider whether the penalty was approved by a supervisor because taxpayer had a prior opportunity to challenge the underlying liability. Taxpayer says that the Appeals officer still needs to verify that requirements of law and administrative procedure have been met. Is compliance with section 6751 part of the verification requirement in section 6330(c)(1)? Or is it now part of an underlying-liability challenge and therefore limited to one bite at the apple under section 6330(c)(2)(B)? Who knows?

And these questions just produce more questions:

*What do we do with pending cases?* Every case in which the record is closed but for which we are working on opinions or waiting for computations under Rule 155 or even in which 90 days haven't elapsed since entry of decision may be subject to a motion to reopen the record or vacate the decision if we determined a penalty issue in favor of the IRS. Are we going to treat our Opinion in this case as though it was an amendment to the Code with an effective date of whenever it hits the internet, or will we make it retroactive, on the theory that the law is what it is, even if we didn't notice it for the last twenty years?

*What will happen to* <u>Greenberg's Express</u>? "As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the

propriety of respondent's motives or of *the administrative* policy or *procedure involved* in making his determinations." Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974) (emphases added) (citing Human Eng'g Inst. v. Commissioner, 61 T.C. 61, 66 (1973)). Imagine if a taxpayer after reading this Opinion wants to know what really happened behind the scenes for the penalty to have made its way into his notice of deficiency. How can we deny him discovery about communications between the auditor and the supervisor now that what happens before the Commissioner issues a notice of deficiency is a material fact? How about communications between auditor and supervisor and any pre-notice advice from counsel? Will interrogatories be enough or will we create some sort of testimonial privilege or will we just overturn this part of Greenberg's Express? Who knows?

*What will we do with the attorney-witness rule?* An attorney generally isn't supposed to try a case in which he's a likely witness. See Rules 24(g), 201(a); Model Rules of Prof'l Conduct r. 3.7 (Am. Bar Ass'n 2016). There will be cases, however, where the penalty comes up only in litigation, but we'll have made communications between trial counsel and supervisory counsel part of respondent's burden of production--and perhaps proof--in such cases. Perhaps the Commissioner will have to have a "B team" waiting in reserve when the first

lawyer and his supervisor on a case who recommend and "approve in writing" a penalty get subpoenas to testify about what is now a material part of the Commissioner's case in chief. Who knows?

*What effect will today's Opinion have on the work-product privilege?* We're supposed to protect against the "disclosure of mental impressions, conclusions, opinions, or legal theories of a party's counsel or other representative concerning the litigation." Rule 70(c)(3)(B). If the penalty issue comes up after litigation begins, how will we do this if communications between a litigating attorney and his supervisor become part of the Commissioner's case? Who knows?

My point is that there will be no repose. And even these hypotheticals and questions are unnecessary to prove the point: The confusion caused by this reconstruction of section 6751(b) already shows up in the debate between the opinion of the Court and the partial dissent. Both agree that the purposivist approach to "initial determination of such assessment" from Chai is appropriate, but they disagree on what "initial determination" means. The partial dissent focuses on "determination" and who has the authority to make one. It looks to the Internal Revenue Manual (IRM) and concludes that a Chief Counsel lawyer can't

make a "determination". See Buch op. pp. 74-78.[2] He can only make a recommendation, and it must be some other IRS employee who makes the "initial determination" to assert a penalty after he chooses whether to follow Chief Counsel's recommendation. See id. (It's quite unclear who that might be.) The majority reasons that Chief Counsel lawyers work for the IRS and can therefore make--as a practical matter, if not as a matter of delegated authority--"initial determinations" to assert penalties against taxpayers. See op. Ct. pp. 19-22.

How do either of these further the *purpose* of the statute? As far as we know, the Chief Counsel lawyer here--the one who made the "initial determination" to include the 20% noncash-contribution penalty in the notice of deficiency--never communicated with the Graevs. How could he have used the threat of a less-than-40% penalty as a bargaining chip if he never even talked to them? And the partial dissent seems to drift even further away from the *purpose* of the statute--a logical extension of the dissent is that we should focus on any "determination" made by some other anonymous and unknown IRS employee who had *authority* to issue the notice of deficiency. But anonymous and unknown IRS employees rarely talk to taxpayers, much less threaten them.

---

[2] The dissenters' view presumably changes once Chief Counsel has jurisdiction over a case (i.e., it's with us); otherwise, they would have dissented from Part III of the majority opinion as well.

With this amount of confusion likely if we follow the *purposivist* approach to interpreting section 6751(b), is it possible that a *textualist* approach would be better?

## III.

Let's look at the text again. Section 6751(b)(1) says:

No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

Section 6751(b)(1) is a restriction on "assessment". As the Supreme Court has said, "assessment" is recording the liability of the taxpayer. See <u>Hibbs</u>, 542 U.S. at 100 ("An assessment is made 'by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary'"); <u>see also</u> sec. 6203. And the Code says once the case is started in our Court an "assessment" of the penalties can't occur until our decision becomes final and unappealable. <u>See</u> secs. 6213(a), 6665(a), 7485. I would therefore continue to hold--in cases appealable to any circuit but the Second--that

compliance with section 6751(b)(1) is not ripe for review in a deficiency setting because the penalties have not yet been "assessed".[3]

---

[3] My proposed holding is bolstered by the effective date of section 6751. The legislation respecting that section says it "shall apply to notices issued, and penalties assessed, after December 31, 2000." See Graev v. Commissioner, 147 T.C. ___, ___ (Graev II) (slip op. at 34) (Nov. 30, 2016) (quoting Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 3306, 112 Stat. at 744). Because "notice" appears exclusively in section 6751(a), and "assessment" appears exclusively in section 6751(b), we said in Graev II, 147 T.C. ___ (slip op. at 35), that "section 6751(a) [was made] effective for 'notices issued' after December 31, 2000, while section 6751(b) was made effective for 'penalties assessed' after" that date.

We correctly reasoned: "As it relates to section 6751(b), the effective date provision ('penalties assessed' after the specified date), like the title of section 6751(b) ('Approval of Assessment'), clearly indicates that the statutory provision is focused on assessment rather than on some earlier event." Id. at ___ (slip op. at 36). And this "harmonizes with our construction of the statute--a penalty assessed after the effective date is subject to the requirement that written approval be in place *as of the time of assessment*, regardless of when the 'initial determination of * * * assessment' might have occurred." Id. If section 6751(b) applies at the time of "initial determination," we said, "the IRS would have been required to procure the written approval by the time of the 'initial determination,' even if the 'initial determination' occurred before the effective date--or even before the enactment-- of section 6751(b)." Id.

Chai considered this reasoning only in a footnote. See Chai v. Commissioner, 851 F.3d 190, 221 n.25 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. While it found our interpretation reasonable and the argument persuasive, the court decided that it didn't "need to go to such lengths." Id. Even crediting our effective-date analysis, the Second Circuit said it did "not believe that this ambiguous provision overcomes the legislative history and requires the incongruous effects that flow from the majority's (and the Commissioner's) approach." Id.

(continued...)

I recognize that some might say my reading makes section 6751(b) ineffective, unable to achieve its purpose of sanitizing some of the IRS's more ill-smelling "bargaining chips." But the fact is that the Tax Court doesn't get a chance to review most penalty determinations before assessment. Most penalties that are assessed each year are "summarily assessable"--generally meaning no preassessment Tax Court review--or are penalties to which section 6751(b)(1) expressly does not apply. See sec. 6751(b)(2). Consider the following data from the IRS's 2016 fiscal year for example:[4]

_____

[3](...continued)
The effective date of the section might not overcome the *legislative history* of section 6751(b), but it is consistent with the *text* of section 6751(b)--which was our point in Graev II. Because a plain reading of section 6751(b) is appropriate and possible, the effective-date analysis continues to lend support to my reading. Could Congress really have expected the IRS to comply with a new requirement *before* the law was enacted?

[4] The data in the table is from Internal Revenue Service, 2016 Data Book 42-43, Tbl. 17 (2017) (providing IRS data for its 2016 fiscal year).

| Type of Tax and Type of Penalty | Civil Penalties Assessed | |
|---|---|---|
| | **Number** | **Amount** [in thousands of dollars] |
| **Civil penalties, total** | **39,573,561** | **27,346,036** |
| **Individual and estate and trust income taxes:** | | |
| **Civil penalties, total** | **31,713,538** | **12,071,419** |
| Accuracy | 499,190 | 1,047,185 |
| Bad check | 571,240 | 59,751 |
| Delinquency | 2,879,878 | 4,273,798 |
| Estimated tax | 10,063,989 | 1,334,598 |
| Failure to pay | 17,691,033 | 4,917,744 |
| Fraud | 3,219 | 389,374 |
| Other | 4,989 | 48,970 |
| **Business income taxes:** | | |
| **Civil penalties, total** | **978,564** | **2,183,902** |
| Accuracy | 2,098 | 242,211 |
| Bad check | 7,347 | 20,182 |
| Delinquency | 458,186 | 851,113 |
| Estimated tax | 212,729 | 253,018 |
| Failure to pay | 286,634 | 528,828 |
| Fraud | 205 | 19,655 |
| S corporation/Partnership information | 11,279 | 54,171 |
| Other | 86 | 214,724 |
| **Employment taxes:** | | |
| **Civil penalties, total** | **5,857,416** | **6,046,139** |
| Accuracy | 1,892 | 3,409 |
| Bad check | 262,532 | 59,518 |
| Delinquency | 1,098,732 | 1,722,144 |
| Estimated tax | 8,298 | 21,585 |
| Failure to pay | 3,144,623 | 1,147,954 |
| Federal tax deposits | 1,340,928 | 3,086,402 |
| Fraud | 233 | 2,595 |
| Other | 178 | 2,533 |
| **Excise taxes:** | | |
| **Civil penalties, total** | **629,428** | **371,381** |
| Accuracy | 1,324 | 1,058 |
| Bad check | 5,341 | 1,972 |
| Daily delinquency | 57,843 | 179,644 |
| Delinquency | 213,741 | 45,832 |
| Estimated tax | 10,838 | 1,999 |
| Failure to pay | 319,031 | 23,451 |
| Federal tax deposits | 5,315 | 39,320 |
| Fraud | 9 | 4 |
| Other | 15,986 | 78,101 |
| **Estate and gift taxes:** | | |
| **Civil penalties, total** | **6,078** | **199,779** |
| Accuracy | 57 | 8,923 |
| Bad check | 33 | 461 |
| Delinquency | 2,139 | 112,655 |
| Failure to pay | 3,716 | 73,584 |
| Fraud | 0 | 0 |
| Other | 133 | 4,157 |
| **Nonreturn penalties** | **388,537** | **6,473,416** |

Of the $27,346,036,000 in penalties that the IRS assessed between October

1, 2015, and September 30, 2016, only $1,975,199,000[5] (or 7.22%[6]) would be

subject to Chai's section 6751(b)(1) review in our Court. (This includes accuracy-

related penalties--which were at issue in Chai--but also includes fraud penalties,

and I'll assume it includes the "other" category of penalties as well.[7]) The

---

[5] The $1,975,199,000 is equal to the total of only accuracy-related penalties, fraud penalties, and "other" penalties in the table that the Commissioner determined only in income, estate, and gift tax cases--penalties are summarily assessed in all employment tax cases and most excise tax cases. See Medeiros v. Commissioner, 77 T.C. 1255, 1259-60 (1981); Judd v. Commissioner, 74 T.C. 651, 653 (1980).

There are $1,298,319,000 total accuracy-related penalties--$1,047,185,000 + $242,211,000 + $8,923,000.

There are $409,029,000 total fraud penalties--$389,374,000 + 19,655,000.

Finally, there are $267,851,000 total "other" penalties--$48,970,000 + $214,724,000 + $4,157,000.

$1,298,319,000 + $409,029,000 + $267,851,000 = $1,975,199,000.

[6] ($1,975,199,000 ÷ $27,346,036,000) x 100 = 7.22%.

[7] Because the IRS's 2016 Data Book doesn't distinguish "assessable" penalties from "other" penalties, and "other" penalties from penalties calculated through electronic means, one has to draw reasonable inferences from the data. The Second Circuit's reading of section 6751(b)(1) might actually affect only "determinations" of accuracy-related penalties and fraud penalties.

remaining $25,370,837,000[8] (or 92.78%[9]) was either penalties for which we have

no preassessment jurisdiction or penalties that section 6751(b)(2) specifically

excludes from section 6751(b)(1). (This includes delinquency penalties, sec.

6651(a)(1); estimated-tax penalties, secs. 6654(a), 6655(a); and failure-to-pay

penalties, sec. 6651(a)(2); see sec. 6751(b)(2)(A). But it also includes partnership-

return penalties, sec. 6698(a); bad-check penalties, sec. 6657; federal-tax-deposit

penalties, sec. 6656(a); daily-delinquency penalties, sec. 6652(c)(2)(A) and (B);

and "nonreturn" penalties, e.g., secs. 6672(a), 6702(a), 6715(a), 6722(a), because

these penalties are either summarily assessed or "automatically calculated through

electronic means," see sec. 6751(b)(2)(B).) The ills cured by the majority opinion

would therefore potentially apply only to a small percentage of penalties--7.22%

to be exact.

That percentage shrinks even more if we consider the proportion of

penalties that taxpayers actually contest in our Court. That specific data set is

unavailable, but we do know that the IRS audited 1,097,921 returns during the

2016 fiscal year and proposed an adjustment to 966,170 of those returns. See

Internal Revenue Service, 2016 Data Book 23-26, Tbl. 9a (2017) (showing that

---

[8] $27,346,036,000 - $1,975,199,000 = $25,370,837,000.

[9] ($25,370,837,000 ÷ $27,346,036,000) x 100 = 92.78%.

1,097,921 income tax, estate tax, gift tax, and nontaxable returns were audited and only 12% resulted in "no change"). During that time, there were only 29,748 Tax Court cases received by IRS Chief Counsel. See id. at 62, Tbl. 27. Accordingly, only about 3%[10] of proposed-assessment cases ended up in Tax Court--further narrowing the circumstances where Chai's construction of section 6751(b)(1) might apply.

These statistics raise an important question: Was Congress really focused on such an insignificant percentage of the penalties assessed each year when it added section 6751(b) to the Code?

I don't think so.

Section 6751(b) curtails IRS abuse for the vast majority of penalties that are assessed without Tax Court review. And considering the fact that *most* penalties can be assessed either by a computer or by an IRS agent without Tax Court review--a fact which we can safely assume Congress knew--it seems that section 6751(b) is a command from Congress to the IRS directly for additional *administrative* safeguards against erroneous assessment even if judicial review and enforcement was unavailable or unlikely. And even if the command were not

---

[10] $(29{,}748 \div 966{,}170) \times 100 = 3\%$.

enforceable in a deficiency case, the IRS has still taken it seriously. It has

guidelines that implement section 6751 throughout the IRM:

- Managerial approval is required for penalty assessments. IRM pt. 20.1.1.2.3 (Aug. 5, 2014).

- "An acting manager with an approved designation to act is considered an immediate supervisor for the purpose of" section 6751(b)(1). IRM pt. 20.1.5.1.4(1)(b) (Dec. 13, 2016).

- For small-business/self-employed cases, "written managerial approval and non-assertions should be documented on the 300-Civil Penalty Approval Form lead sheet." IRM pt. 20.1.5.1.4.1(2) (Dec. 13, 2016).

- Accuracy-related and civil-fraud penalty issues "require review and managerial approval prior to being asserted." IRM pt. 20.1.5.2.2(3) (Dec. 23, 2016).

- Managerial approval is required to assert accuracy-related penalties in automated underreporter cases. IRM pt. 20.1.5.3.1(3) (Jan. 24, 2012).

- Managerial approval of penalties is required in cases where penalties aren't subject to deficiency procedures. IRM pt. 20.1.5.16.5(14) (Dec. 23, 2016).

To read section 6751 to have nothing to do with our Court's determination

of penalties in deficiency cases before us would just make it similar to the so-

called Ten Deadly Sins provisions of the 1998 Act--which likewise constrain the

IRS (by threatening the livelihood of its employees), but which have no effect in a

deficiency case. See TIGTA, Semiannual Report to Congress: October 1, 2016 -

March 31, 2017, app. VI at 97 (reporting IRS enforcement of the Internal Revenue

Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 1203, 112 Stat. at 720-22, which resulted in 130 substantiated allegations during a six-month period and removal of 13 employees).

We shouldn't extend section 6751(b)'s reach to Tax Court review in deficiency cases--where it makes little sense and threatens much confusion; and more importantly, where it requires such a tortured reading of the text of section 6751(b) and will overturn so much precedent.

My reading achieves the stated congressional purpose for more than 90% of penalties. It's therefore quite practical. But there's no need to rely on pragmatism here.

IV.

Almost 130 years ago, the Supreme Court reminded us that

[i]t is an old and familiar rule that "where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." * * *

United States v. Chase, 135 U.S. 255, 260 (1890).

This canon of construction--favoring the specific over the general--remains relevant. Indeed, "it is a commonplace of statutory construction that the specific

governs the general," <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 384 (1992), which "is particularly true where * * * 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions,'" <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639, 645 (2012) (quoting <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  This canon is "perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission"; "[t]o eliminate the contradiction, the specific provision is construed as an exception to the general one." <u>Id.</u>  But it also applies where a "general authorization [or prohibition] and a more limited, specific authorization [or prohibition] exist side-by-side." <u>Id.</u>  In that case, "the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'" <u>Id.</u> (quoting <u>D. Ginsberg & Sons, Inc. v. Popkin</u>, 285 U.S. 204, 208 (1932)).

Once a petition has been timely filed in Tax Court and we thus have jurisdiction over one or more tax years, we have jurisdiction to "redetermine"--or "determine", if the section heading is to be believed--the correct amount of any deficiency in a *de novo* proceeding, and the notice of deficiency is nothing more

than part of the pleadings.  See sec. 6214(a); Greenberg's Express, 62 T.C. at 328 ("[T]rial before the Tax Court is a proceeding de novo" and "our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level").  We even have the power to impose penalties of our own under section 6673 on taxpayers who take "frivolous or groundless" positions or institute proceedings primarily for delay, or who have "unreasonably failed to pursue available administrative remedies." Sec. 6673(a).  This penalty is one imposed "under this title," to quote section 6751, yet how can it be governed by that section's general rule that requires its personal approval "(in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate"?  Does a Tax Court judge even have an immediate supervisor?

We should just apply the specific-over-general canon of construction.  If we did, we would view section 6751(b)(1) as a general rule that governs the assessment of more than 90% of the penalties the IRS determines *and* assesses annually--namely, penalties without any preassessment judicial review.  One can then see how sections 6214 and 6673 are specific exceptions to this general rule-- both defined and limited by who is determining the penalty that will be assessed against a taxpayer:  The general rule of section 6751 applies to the penalties

determined and assessed by the IRS itself; the more specific rules of sections 6214 and 6673 apply to the penalties determined by our Court and assessed under section 6215. Section 6214 empowers our Court to independently determine whether a penalty is appropriate regardless of underlying administrative determinations. It is in itself a protection from threatening and even erroneous penalties, and one hopes it is even more effective than the general restriction in section 6751(b)(1)--since it is a protection that focuses on the *liability* for a penalty, not its *assessment*.

By ignoring this canon of construction, and instead construing sections 6751(b) and 7491(c) as the majority has and as the Chai court did, we may implicitly repeal section 6673--that is, unless we figure out who our "immediate supervisor" is or inflict more torture on the Code's language to somehow preserve it. We could avoid all this--all the future hypotheticals that I predict will become real; all the strange-but-foreseeable consequences to long-established principles like the ones embodied in Greenberg's Express, the attorney-witness rule, and the work-product privilege; and all the windfalls to taxpayers who really are liable for penalties under the Code but who will for a time escape them--by applying the specific-over-general canon of construction. And we should've waited for the chance to do just that in a case appealable to a different circuit.

Before <u>Chai</u> and the majority's holding today, it was widely understood that our Court gave taxpayers protection by providing an independent *de novo* review of *anything* over which we exercised our preassessment, deficiency jurisdiction. See <u>Clapp v. Commissioner</u>, 875 F.2d 1396, 1403 (9th Cir. 1989) (notice of deficiency isn't final; "[i]f the taxpayer files a petition in the Tax Court, liability will be adjudicated prior to payment," and the "Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition"); <u>Raheja v. Commissioner</u>, 725 F.2d 64, 66 (7th Cir. 1984) (Tax Court doesn't generally look behind the notice of deficiency to examine the Commissioner's motive or procedure; "[t]he rationale for this rule is that the Tax Court proceeding is *de novo*"), <u>aff'g</u> T.C. Memo. 1981-690; <u>Jones v. Commissioner</u>, 97 T.C. 7, 17 (1991) ("The purpose of a proceeding before * * * [the Tax Court] is to determine a taxpayer's correct tax liability"). But I've shown that section 6751 is a restriction on the IRS's ability to "assess", not a limitation on its ability to determine a "deficiency". And our "deficiency" jurisdiction doesn't allow us to restrict "assessment" unless Congress enables us to. <u>See, e.g.</u>, <u>Ferguson v. Commissioner</u>, 568 F.3d 498, 504-05 (5th Cir. 2009) (explaining that our ability to restrict late "assessments" that violate section 6501(a) had to be provided to us by Congress in section 7459(e), and there it is couched as a

"deficiency" determination: "[I]f the assessment or collection of any tax is barred by any statute of limitations, the decision of the Tax Court to that effect *shall be considered as its decision that there is no deficiency in respect of such tax*." (emphasis added)), aff'g T.C. Memo. 2006-32.

## V.

Our Opinion today will have costs. And those costs are foreseeable. Here's a prediction: If the IRS is clever and doesn't care that today's Opinion will let some taxpayers who really should be penalized off their well-deserved hook, it will acquiesce in our decision. It will look at the costs of today's Opinion-- satellite litigation about the continued vitality of Greenberg's Express, work-product privilege, the attorney-witness rule, and all the complicated questions of whether there can be multiple "initial determinations" or who is a supervisor and the like--and decide to train revenue agents and their supervisors about the consequences of not initialing a penalty-recommendation memo or checking a box on a form. It will revise the IRM, crank out a Chief Counsel memorandum or two, and maybe tweak the penalty-approval forms. The cost of scrawling initials or checking the box is close to nil and will remain so; litigation is costly and will remain so. A rational revenue agent and his supervisor will have every incentive to recommend and approve penalties in marginal cases, and doing so in paper-

perfect form will avoid costly litigation later on. More taxpayers will have more

penalties "initially determined" against them. We know that relatively few

taxpayers ever challenge the results of an IRS audit in court. And thus a provision

meant to protect taxpayers from unjustified penalties will lead to more taxpayers

being penalized in more marginal cases.

I doubt this will further whatever purpose Congress had in mind. And

today's Opinion--with its promise of a windfall to random taxpayers who will

benefit from what amounts to a judge-made amendment to the Code, with its

acquiescence in Chai's misconstruction of tax terms, and with its seeding of future

litigation having nothing to do with the merits of the deficiency cases--will have

doleful consequences for years to come.

All this would ordinarily lead to a statement that I respectfully dissent. But

this case is appealable to the circuit that issued Chai, and it is our obligation in a

hierarchical system to obey those who review us when we enter judgments they

are empowered to review.[11] As trial judges, we must look to Holmes the Greater:

---

[11] See Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 192 (2012)
(Holmes, J., dissenting) (criticizing refusal to follow binding circuit precedent as
an unsafe "reverse benchslap"), aff'd in part, rev'd in part, and remanded sub nom.
Logan Trust v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015); but see
Whitehouse Hotel Ltd. P'ship v. Commissioner, 755 F.3d 236, 243 (5th Cir. 2014)
(reiterating a disagreement with circuit court ok if it doesn't affect result, because

(continued...)

"The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law." Oliver Wendell Holmes, Jr., "The Path of the Law", 10 Harv. L. Rev. 457, 461 (1897).

Even a dissenter from the whole enterprise must play the prophet and try to predict Chai's effect on any appellate review of Graev III. Through this legal-realist lens, it seems to me that the majority's decision is more pragmatic than the partial dissent; and that it does a better job of achieving the *purpose* of the statute. Although it appears that Chief Counsel Attorney Mackey didn't communicate with the Graevs and therefore couldn't have used the 20% noncash-contribution penalty as a bargaining chip, it does seem that he (and not some other IRS employee) effectively--if not as a matter of delegated authority--made the initial determination regarding the penalty. The partial dissent is far more persuasive on the question of the authority of Chief Counsel lawyers to make determinations before the IRS issues a notice of deficiency. The problem is that having moved from the language of the Code to redefine "assessment" to mean "determination in the notice of deficiency (or an answer or amended answer)" there is little reason to not redefine "determination" to mean "recommendation with the backing of a

_____

[11](...continued)
"begrudging compliance * * * is nonetheless compliance"), aff'g in part, vacating in part, and remanding 139 T.C. 304 (2012).

lawyer's professional status." If section 6751(b) is to achieve its purpose, it seems somewhat more likely to apply to the person at the IRS who is actually making the substantive judgment call regarding penalties; and I think the Second Circuit is thus somewhat more likely to agree with that view.

But I don't concur with the majority's decision to extend Chai to all of the other circuits. The problem lies in our trying to find section 6751's purpose and then using that purpose to define the meaning of the text, because "no legislation pursues its purposes at all costs," Rodriguez v. United States, 480 U.S. 522, 525-26 (1987) (*per curiam*), and "'[e]very statute purposes, not only to achieve certain ends, but also to achieve them by particular means,'" Freeman v. Quicken Loans, Inc., 566 U.S. 624, 637 (2012) (quoting Director, Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 136 (1995)). "It is quite mistaken to assume * * * that 'whatever' might appear to 'further[] the statute's primary objective must be the law.'" Henson v. Santander Consumer USA Inc., 582 U.S. __, __, 137 S. Ct. 1718, 1725 (2017) (quoting Rodriguez, 480 U.S. at 526).

Laws are like vectors--they have both direction *and* magnitude. See Frank H. Easterbrook, "The Role of Original Intent in Statutory Construction", 11 Harv. J.L. & Pub. Pol'y 59, 63 (1988). Chai says it furthers the *purpose* of section

6751(b), but it does so by changing the meaning of "assessment". Maybe this was some kind of drafting error and no one caught the substitution of "assessment" for "determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer)." But for knowledgeable legislators who might have been skeptical of upsetting traditional Tax Court practice, using "initial determination of such assessment" and "approved (in writing) by the immediate supervisor" might have been an assurance that the amendment was peculiarly aimed at IRS employees who determine penalties--and assess them--without review *outside* the IRS. This is the overwhelming proportion in numbers and dollars of all penalties assessed, and section 6751(b) has had a great effect on the way the IRS operates in its everyday affairs. I agree with everyone else that section 6751 is *directed* in favor of taxpayers, but a proper measurement of its magnitude should show that it stops at the Tax Court's door. I think we go too far when we extend its purview to our preassessment forum.

I would've preferred to see our Court decide this case under the Golsen rule and live to fight another day in another circuit. See Golsen, 54 T.C. at 757. Instead, I'm afraid we've bought ourselves years of procedural litigation--when the more timorous IRS attorneys turn out their lights tonight, it may not be ghouls they fear, but the meaning of "initial determination."

I therefore respectfully concur only in the result.

BUCH, J., concurring as to Parts I and III and dissenting as to Part II: The opinion of the Court has overruled our holding in Graev v. Commissioner, 147 T.C. __ (Nov. 30, 2016), and has chosen to follow the Court of Appeals for the Second Circuit's opinion in Chai v. Commissioner, 851 F.3d 190 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo 2015-42. Whether on the merits or "in the interest of repose and uniformity", we join with the opinion of the Court in following Chai. Our very narrow area of disagreement is on the issue of whether a recommendation from an attorney within the IRS Office of Chief Counsel can constitute "the initial determination" to impose a penalty for purposes of section 6751(b)(1). Because the attorney has the authority only to advise or recommend, we would hold that the attorney's recommendation to assert a penalty is not the initial determination that must be approved in writing.

It may be helpful to begin with the two main points over which the vast majority of the Court now agrees. We agree that, in a deficiency proceeding, we may consider whether the Commissioner complied with section 6751(b)(1). And we agree that under section 7491(c), the Commissioner has the burden to establish compliance with section 6751(b)(1). We briefly address those points in turn.

I.      Compliance With Section 6751(b)(1)

We begin with an essential point:  section 6751(b)(1) is ambiguous.  It provides:  "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

In the tax world "assessment" has a very specific and well-understood meaning:  It is the act of recording a taxpayer's liability.  Sec. 6203.  As the Court of Appeals noted:  "If assessment is the formal recording of a taxpayer's tax liability, then § 6751(b) is unworkable:  one can determine a deficiency, see I.R.C. §§ 6212(a), 6213(a), and whether to make an assessment, but one cannot determine an assessment."  Chai v. Commissioner, 851 F.3d at 218-219 (internal quotation marks omitted) (quoting Graev v. Commissioner, 147 T.C. at __ (slip op. at 85) (Gustafson, J., dissenting)).  So we are left to make sense of that language.

Fortunately, the Court of Appeals has provided a clear interpretation for us to follow.  It held that "§ 6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty."  Id. at 221.  This reading is

faithful to the legislative history and focuses us on the "initial penalty determination". Id. at 219; Graev v. Commissioner, 147 T.C. at __ (slip op. at 101) (Gustafson, J., dissenting); S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601.

II.     The Commissioner's Burden Under Section 7491(c)

Deciding that section 6751(b)(1) requires written approval of the initial penalty determination necessarily gives rise to the question of whether the Commissioner has the burden of establishing that the requisite written approval occurred. The Commissioner has "the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount". Sec. 7491(c). In Higbee v. Commissioner, 116 T.C. 438, 446 (2001), we extensively quoted the legislative history of section 7491(c) and concluded by observing "that for the Commissioner to meet his burden of production, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." With that standard in mind, we turn back to section 6751(b)(1).

We, along with the Court of Appeals, have concluded that it is not appropriate to impose a penalty without the requisite supervisory approval under section 6751(b)(1). The introductory clause of section 6751(b)(1) makes this

clear; it provides: "No penalty under this title shall be assessed unless" the initial penalty determination "is personally approved (in writing) by the immediate supervisor of the individual making such determination". The supervisory approval is a necessary predicate to the imposition of a penalty, because without it "[n]o penalty * * * shall be assessed". Or to borrow from Higbee, supervisory approval is necessary to establish that it is appropriate to impose the relevant penalty. Because it is necessary, section 7491(c) requires that the Commissioner come forward with sufficient evidence to show supervisory approval of the initial penalty determination.

## III.    Attorney Mackey's Lack of Authority

Where we part company with the opinion of the Court is on the issue of whether Mr. Mackey, an attorney within the IRS Office of Chief Counsel, had the authority to make the initial penalty determination. If he lacked that authority, then the approval of his supervisor is irrelevant.

### A.    The Role of IRS Counsel

The opinion of the Court does not appear to recognize that the Internal Revenue Service and the IRS Office of Chief Counsel have distinct roles and responsibilities.

The responsibility to administer the internal revenue laws falls on the Commissioner and his subordinates. The Commissioner has "such duties and powers as the Secretary may prescribe" including administering the internal revenue laws. Sec. 7803(a)(2)(A). The Secretary has prescribed such duties and powers, making the Commissioner "responsible for the administration and enforcement of the Internal Revenue laws." Treas. Dept. Order No. 150-10 (Feb. 25, 2016). Respondent has not directed us to any similar order delegating responsibility to administer the internal revenue laws to the Chief Counsel or his subordinates.

In contrast to the Commissioner's responsibility to administer the internal revenue laws, the role of the Chief Counsel and his subordinates is to advise the Commissioner. The Chief Counsel is "the chief law officer for the Internal Revenue Service and shall perform such duties as may be prescribed by the Secretary" including being "legal advisor to the Commissioner and the Commissioner's officers and employees" and "represent[ing] the Commissioner in cases before the Tax Court". Sec. 7803(b)(2). The distinction between these separate roles is reinforced upon review of the delegations of authority and internal guidance within the Internal Revenue Service and the IRS Office of Chief Counsel.

The opinion of the Court does not direct the reader to any authority for the proposition that the lawyers advising the IRS have the authority to make a penalty determination, whether initial or final. The closest we get is a citation of Internal Revenue Manual (IRM) pt. 4.8.9.7.2(1) (Oct. 30, 2004); see op. Ct. p. 10. The quoted language discusses what is to take place "[i]f Area Counsel suggests changes to the proposed notice". The use of the word "suggests" belies the notion that an Area Counsel attorney has the authority to make a determination. The heading for that provision, which the opinion of the Court omits, also belies the notion that Counsel is making a determination; the provision is captioned "Area Counsel Review." (The current, renumbered section uses the heading "Area Counsel Recommendations." See IRM pt. 4.8.9.9.2.2 (July 9, 2013).) Neither a suggestion, nor a review, nor a recommendation is a determination.

The current iteration of IRM pt. 4.8.9.9.2(1) (July 9, 2013) explicitly sets forth the role of Counsel in issuing notices of deficiency:

> The authority to issue a notice of deficiency rests with those IRS officials delegated the authority by Servicewide Delegation Order 4-8, as outlined in IRM 4.8.9.5, Authority to Issue Notices of Deficiency. The role of Area Counsel in the notice of deficiency process is to provide advice on whether a notice of deficiency should be issued, and if so, to make recommendations concerning the issues asserted and the wording of the determination.

A review of Delegation Order 4-8 confirms that no one in the IRS Office of Chief Counsel has been delegated the authority to issue a notice of deficiency.

Thus far, we have focused on provisions that relate to the review or issuance of notices of deficiency, but we can look elsewhere in the Internal Revenue Manual to see who has the authority to make a penalty determination. For example, we can look to Part 4 (Examining Process), Chapter 10 (Examination of Returns), section 6 (Penalty Considerations). There we learn: "The determination whether to assert penalties, identify the appropriate penalties, and calculate the penalty amount accurately is primarily the examiner's responsibility." IRM pt. 4.10.6.1.1(1) (May 14, 1999). No one has directed us to a provision that makes the determination whether to assert penalties the responsibility of an attorney in the IRS Office of Chief Counsel, whether primary, secondary, or tertiary.

We could look to see what the IRS Office of Chief Counsel says on the subject. What is sometimes called the Chief Counsel Directives Manual begins at part 30 of the Internal Revenue Manual. Part 33 is titled "Legal Advice". And part 33.1.2.8(1) (Oct. 17, 2016) governs the review of notices of deficiency originating in the Examination function.[1]

---

[1]A separate provision addresses the review of notices of deficiency originating in Appeals. See IRM pt. 33.1.2.7.4 (June 2, 2014).

Counsel's role is clear:

> The authority to issue a deficiency notice rests with the
> Commissioner, Area Directors, Field Territory Managers, Service
> Campus Directors, and Appeals Team Managers. The role of the Field
> Counsel is to advise whether a deficiency notice should be issued,
> and if so, to make recommendations concerning the issues to be
> asserted and the wording of the determination.

The role of counsel is to advise and recommend, not determine. Again, neither

respondent nor the opinion of the Court has directed us to any provision that gives

attorneys in the IRS Office of Chief Counsel the authority to make a penalty

determination.[2]

## B.      The Role of Mr. Mackey

The record does not establish that the IRS Office of Chief Counsel has the

authority to make a penalty determination. Moreover, the record is clear that Mr.

Mackey, an attorney within the IRS Office of Chief Counsel, was acting as an

advisor and not making a penalty determination.

---

[2]The Secretary may prescribe the duties of the Commissioner and of the
Chief Counsel. See sec. 7803(a)(2), (b)(2), respectively. And the Secretary may
designate what "higher level official" has the authority to approve the initial
determination of a penalty. Sec. 6751(b)(1). Whether personnel in the IRS Office
of Chief Counsel could be authorized to determine a penalty is not before us, but
as of the writing of this dissenting opinion, they have not been so authorized.

The opinion of the Court relies on a September 12, 2008, memorandum prepared by Mr. Mackey and initialed by his supervisor as constituting the initial penalty determination. That memorandum could not be clearer that Mr. Mackey was acting as a legal advisor. Over half of the memorandum is redacted, and those redactions were made, at least in part, because the Commissioner asserted a claim of attorney-client privilege as to those redactions. Moreover, the memorandum states explicitly that it "may contain privileged information." It is clear that the September 12, 2008, memorandum that the opinion of the Court identifies as the initial penalty determination was no such thing; it was advice.

We need not read between the lines or infer from the text of the memorandum that it was mere advice; respondent concedes the point as part of the stipulations in this case:

> 111. The Office of Chief Counsel has the delegated authority to advise Respondent as to the applicability of a penalty under the Internal Revenue Manual.
> 112. The role of Counsel is to advise whether a deficiency notice should be issued, and if so, to make recommendations concerning the issues to be asserted and the wording of the determination.
> 113. Respondent's position is that Chief Counsel Attorney Gerard Mackey was assigned to review the SNOD issued to Petitioners in this case and was the first to recommend pursuit of the penalties by advising Respondent to assert the accuracy related penalties in the SNOD to be issued to Petitioners.

Respondent has stipulated that Mr. Mackey's role was to advise and recommend.

C.     Determining Versus Recommending or Advising

In a feat of linguistic jiu-jitsu, respondent maintains "that the recommendation or advice to pursue the assessment of a penalty constitutes the 'initial determination' of a penalty assessment within the meaning of section 6751." Second Supplemental Stipulation of Facts, para. 109 (Jan. 15, 2015). To maintain this position is to ignore the plain meanings of the words "determine", "recommend", and "advise".

To make a determination is to establish something conclusively. When ascertaining the plain meaning of words, it is appropriate to consult dictionaries. See Nat'l Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 480 n.10 (1979); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991). Webster's Collegiate Dictionary 315 (10th ed. 1996) defines "determine" as "to fix conclusively or authoritatively". The Random House College Dictionary 362 (rev. ed. 1980) defines it as "to settle or decide (a dispute, question, etc.) by an authoritative or conclusive decision". These definitions are consistent; a determination is authoritative or conclusive.

By respondent's own admission, Mr. Mackey's actions were neither authoritative nor conclusive; he advised and recommended. To advise means "to

give advice" or "to give information or notice". Webster's Collegiate Dictionary 18. And to recommend is "to present as worthy of acceptance or trial". Id. at 976. Neither term hints at anything authoritative or conclusive. The actions of Mr. Mackey, giving advice or making a recommendation, simply do not fit within the statute, which focuses on the person making the initial determination.

## Conclusion

Section 6751(b)(1) requires that the initial penalty determination be approved in writing by the immediate supervisor of the individual making the determination. By the respondent's own characterization, Mr. Mackey advised and recommended that a penalty be asserted, but he did not determine it; he lacked the authority to do so. Accordingly, we dissent as to Part II of the opinion of the Court.

FOLEY, VASQUEZ, GOEKE, GUSTAFSON, and MORRISON, JJ., agree with this concurring in part and dissenting in part opinion.